

RECEIVED SEP 2 1 2005 JUDGE SWEET CHAMBERS

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> First Liberty Group, Inc., and ) <br> Mauricio DaSilva ) <br> ) <br> Defendants. ) <br> ) | 04 CV 7609 (RWS) <br><br> **Order For Entry of** <br> **Judgment By Default Against** <br> **First Liberty Group, Inc., and** <br> **Mauricio DaSilva** |

On September 27, 2004, the U.S. Commodity Futures Trading Commission ("Commission") filed a Complaint charging defendant First Liberty Group, Inc. ("FLG") with cheating, defrauding and deceiving customers in violation of 4b(a)(2)(C)(i) and (iii) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §6b(a)(2)(C)(i) and (iii) (2002) and Section 1.1(b)(1) and (3) of the Commission's Regulations (the "Regulations"), 17 C.F.R. §1.1(b)(1) and (3) (2004). The Complaint further charged defendant FLG with soliciting, or accepting any order for, or otherwise dealing in illegal foreign currency futures contracts in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a). The Complaint also charged FLG with violating Section 4b(a)(2)(C)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(C)(i) and (iii), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R. §1.1(b)(1) and (3), through the acts of its officials, agents, or other persons pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(b).

The Complaint also charged Defendant Mauricio DaSilva ("DaSilva"), FLG's founder and Chief Executive Officer, with violating Sections 4(a) and 4b(a)(2)(C)(i) and (iii) of the Act, 7 U.S.C. §§ 6(a) and 6b(a)(2)(C)(i) and (iii), and Commission Regulation 1.1(b)(1) and (3), 17



C.F.R. § 1.1(b)(1) and (3), in his capacity as a controlling person of FLG pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

On September 27, 2004, the Court issued a Statutory Restraining Order ("SRO"), which, among other things, froze the Defendants' assets, granted the Commission immediate access to all books and records related to the Defendants' business, and ordered that the Defendants provide to the Commission a full accounting of their assets and funds.

The Defendants were properly served with the complaint. The Defendants failed to appear, plead, file an answer or otherwise defend this action; and Defendant DaSilva is not an infant, in the military, or an incompetent person. On April 6, 2005, the Clerk of this Court issued certificates of default pursuant to Local Rule 55.1 and Rule 55(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") against Defendants.

The Commission has now submitted its Application for Entry of Default Judgment, Permanent Injunction and Ancillary Relief ("Application") against Defendants pursuant to F.R.C.P. 55(b)(2) and Local Rule 55.2(b). The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application, and other written submissions of the Commission filed with the Court, and being fully advised, hereby:

**GRANTS** the Commission's Application for Entry of Judgment by Default Against Defendants and enters findings of fact and conclusions of law finding Defendants liable as to all violations as alleged in the Complaint. The Court further grants the Commission's request to assess monetary damages against Defendants, including disgorgement, restitution, civil monetary penalties, and costs and fees. Accordingly, the Court now issues the following Order for Default Judgment, Permanent Injunction and Ancillary Equitable Relief ("Order") against Defendants on issues of liability and ancillary equitable relief.

I.   **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.   **Jurisdiction and Venue**

This Court has jurisdiction over the subject matter of this action and the Defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

The Commission has jurisdiction over FLG's transactions because most, if not all, of the foreign currency futures transactions that Defendants offered, or entered into, were with persons who were members of the retail investing public who were not eligible contract participants. FLG marketed its managed foreign currency trading accounts to individuals who had assets totaling less than $5 million and had no business, personal, or other need to take or make delivery in foreign currency or to hedge against movements in the foreign currency markets. Instead, customers entered into these transactions to speculate and profit from anticipated price fluctuations in the markets for these currencies. In short, they were unsophisticated retail customers who intended to profit by speculating on the changing relative values of foreign currencies and the United States dollar through their accounts at FLG.

Furthermore, pursuant to Section 2(c)(2)(B) of the Act, 7 U.S.C. § 2(c)(2)(B), none of the counterparties to the transactions at issue were:

    (I)       a financial institution;
    (II)      a broker or securities dealer or futures commission merchant…
    (III)     an associated person of a broker or dealer…,
    (IV)     an insurance company…,
    (V)      a financial holding company,
    (VI)     an investment bank holding company.

FLG was not a proper counterparty or an affiliate of a proper counterparty under the Act authorized to engage in foreign currency futures transactions with retail customers. FLG was not a financial institution, a broker or dealer, an associated person of a broker or dealer, an insurance company, a financial holding company, or an investment bank holding company. FLG was not a Futures Commission Merchant ("FCM"), or an affiliate of a FCM. Accordingly, the Commission has jurisdiction over FLG's transactions.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1, in that the Defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act occurred within this district, among other places.

**B.      Findings of Fact**

FLG was incorporated on October 17, 2003 in the State of New York. FLG has never been registered with the Commission in any capacity.

Mauricio DaSilva ("DaSilva") was the founder and Chief Executive Officer of FLG. DaSilva listed himself as the President of FLG in FLG's bank account opening documents. DaSilva has never been registered with the Commission in any capacity. DaSilva also opened a bank account at HSBC ("HSBC account") on or about October 24, 2003 into which customer funds were deposited. DaSilva was the sole signatory on the HSBC account and was listed as the President of FLG on these account records. On or about November 18, 2003, DaSilva opened an account on behalf of FLG with Federal Express and in November 2003, he opened an account for FLG's telephone answering service with MAP Communications, Inc. In addition, DaSilva signed the lease for FLG's business address located at 82 Wall Street, Suite 701, New York, New York on October 16, 2003.

FLG maintained the HSBC account into which a net total of $2,704,597.40 of customer funds were deposited for the purported purpose of trading foreign currency between at least November 2003 to May 2004. Instead of using the customer funds deposited into the HSBC account for the purposes of trading foreign currency, over $2 million in customer funds were transferred by wire to overseas bank accounts in the names of various foreign companies in Israel and the Netherlands. Defendant DaSilva, as sole signatory, was responsible for all movement of funds in FLG's HSBC account. There is no record that any money flowed back from these foreign companies to FLG's HSBC account. Also, DaSilva used over $9,000 in FLG customer funds to pay cable bills, postage fees, FedEx, Con Edison, MAP Communications, and Verizon. In addition, checks totaling $12,500 were drawn against the HSBC account and made payable to DaSilva.

From at least November 2003 to May 2004, employees of FLG solicited funds from customers purportedly to be used for trading foreign currency. The funds received by FLG were not used for trading foreign currency. Instead, customer funds were deposited into a business checking account in FLG's name ("FLG bank account") by DaSilva, who served as the sole signatory on the account and was the founder and Chief Executive Officer of FLG. More than 90% of the funds received by FLG were either used by Defendants FLG and DaSilva or transferred to foreign bank accounts maintained in the name of various foreign companies in Israel and the Netherlands, none of which companies appear to have traded foreign currency on behalf of FLG's customers. Additional funds were used for office supplies and expenses, and bank related fees.

FLG telephone solicitations and other advertising materials purported to offer customers the opportunity to speculate in the value of foreign currencies. FLG employees offered to open

and manage customer foreign currency accounts, and promised customers steady returns on their funds while downplaying the risk of loss such as promises that customers would reap profits of 10 to 20%, and that FLG imposed a 10% stop-loss policy.

After sending their money to FLG, customers received bi-weekly statements from FLG, which typically reported consistent net earnings for each two-week period. After customers received these statements, FLG employees pressured them to make additional high-dollar investments with the firm. FLG did not disclose to customers that their funds would not be managed as promised, or that their funds would be used in furtherance of the scheme.

In soliciting prospective customers to trade foreign currency on their behalf, FLG made the following misrepresentations of material facts: all funds deposited by customers would be used for foreign currency trading; FLG's four-year trading record indicated that it had no losing months and annual returns of 27.22% in 2000, 24.71% in 2001, 34.87% in 2002 and 40.95% in 2003 with an average annualized return of 31.94% despite the fact that FLG wasn't incorporated until 2003, didn't begin its operation at 82 Wall Street until October 16, 2003 and did not open the HSBC account until October 24, 2003; and FLG imposed a 10% stop-loss policy that did not exist, and, alternatively, could not guarantee that customer losses would be minimized.

FLG's promotional materials described an opportunity to profit based upon the fluctuations in the relative values of foreign currencies. While the defendants claimed that their funds were used in spot transactions, the foreign currency that defendants purported to offer and sell were actually contracts for future delivery of foreign currencies that were cash settled in U.S. dollars ("futures contracts"). The prices or pricing formulas for these contracts were established at the time the purported contracts were initiated, and were ostensibly settled through offset, cash

settlement or other means to avoid delivery. The contracts did not have delivery dates. These purported contracts were offered to the general public and were not individually negotiated.

The customers who sent funds to FLG had no commercial need for the foreign currency. Instead, customers entered into these transactions to speculate and profit from anticipated price fluctuations in the markets for these currencies.

Customers did not anticipate taking -- and did not take -- delivery of the foreign currencies they purportedly purchased as a consequence of these transactions. FLG did not screen customers for their ability to make or take delivery of foreign currency. FLG did not require their customers to make or take delivery of foreign currency nor to set up banking relationships to facilitate delivery of the foreign currencies. FLG did not conduct its purported foreign currency futures transactions on or subject to the rules of a board of trade that has been designated by the Commission as a contract market, nor were FLG's transactions executed or consummated by or through a contract market. FLG did not conduct transactions on a facility registered as a derivatives transaction execution facility. FLG was not an appropriate counterparty under the Act for the alleged transactions herein.

The customers solicited by FLG were not eligible contract participants.

## C.    Conclusions of Law

### 1.    Defendants' Transactions Were Futures Contracts

The foreign currency contracts offered and sold by Defendants were futures contracts. The contracts involved the purchase and sale of foreign currency for future -- as opposed to immediate or deferred -- delivery. The contracts provided for delivery of a specific type of foreign currency at an unspecified point in the future at a price or pricing formula that was determined at the time the contract is entered. Moreover, Defendants' customers never intended

7

or had the ability to take delivery of foreign currencies. Rather, Defendants' customers expected that all of the foreign currency contracts traded in their accounts would be offset. Notably, the customers' account statements indicate that the contracts were always settled by an offsetting transaction and did not ever result in delivery of foreign currencies. Customers did not have accounts at any foreign financial institution for the delivery of foreign currency. Further, no such accounts appear to have existed for FLG in connection with its purported spot transactions with banks and brokerage houses.

2.  **Violations of Section 4b(a)(2)(C)(i) and (iii) of the Commodity Exchange Act and Commission Regulation 1.1(b)(1) and (3)**

From at least November 2003 to May 2004, Defendant FLG cheated or defrauded or attempted to cheat or defraud customers or prospective customers of FLG and willfully deceived or attempted to deceive customers or prospective customers by, among other things: misappropriating or misusing funds received from customers and making false statements regarding trading losses, the risks of trading foreign currencies, the legitimacy of their operation, and the safety of customer funds, all in violation of Section 4b(a)(2)(C)(i) and (ii) of the Act, 7 U.S.C. § 6b(a)(2)(C)(i) and (iii), and Regulation 1.1(b)(1) and (3), 17 C.F.R.§ 1.1(b)(1) and (3). Defendant FLG's conduct was in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, and such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a)(2)(C)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(C)(i) and (iii).

During the relevant time period, DaSilva, as the founder and Chief Executive Officer of FLG, directly or indirectly controlled FLG, its employees and others and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count I. Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), DaSilva is liable for the

violations of Section 4b(a)(2)(C)(i) and (ii) of the Act, 7 U.S.C. § 6b(a)(2)(C)(i) and (iii), and Regulation 1.1(b)(1) and (3), 17 C.F.R.§ 1.1(b)(1) and (3), to the same extent as FLG.

Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2, FLG is also liable for any violations of Section 4b(a)(2) of the Act by its officers, directors, managers, employees, and agents, in that all such violations were within the scope of their office or employment with FLG.

### 3.  Violations of Section 4(a) of the Commodity Exchange Act

From at least November 2003 to May 2004, FLG offered to enter into, executed, confirmed the execution of, or conducted an office or business in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in transactions in, or in connection with, a contract for the purchase or sale of a commodity for future delivery when: (a) such transactions were not conducted on or subject to the rules of a board of trade which was designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity, and (b) such contracts were not executed or consummated by or through such contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a).

During the relevant period, DaSilva, as the founder and Chief Executive Officer of FLG, directly or indirectly controlled FLG and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting FLG's violations of Section 4(a) of the Act, 7 U.S.C. § 6(a). Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), DaSilva is liable for the violations of Section 4(a) of the Act, 7 U.S.C. § 6(a), to the same extent as FLG.

### 4.  Appropriate Relief

Permanent injunctive relief is warranted in light of the egregious nature of the Defendants' conduct in fraudulently soliciting and receiving over two million dollars from

customers to invest in foreign currency contracts over a 6-month period as well as Defendants' high level of scienter in conducting a well-planned scheme to systematically defraud the public. These facts demonstrate a reasonable likelihood of futures violations.

Imposition of a civil monetary penalty is appropriate in this case as Defendants' violations of the Act were intentional and directly impacted the numerous victims of this fraud. Likewise, the remedies of disgorgement and restitution are appropriate to compensate the victims of Defendants' wrongful acts and to deprive Defendants of the use of ill-gotten gains.

## II. ORDER FOR PERMANENT INJUNCTIONS

**IT IS HEREBY ORDERED** that:

Defendants FLG and DaSilva are permanently restrained, enjoined and prohibited from directly or indirectly:

- A. offering or entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in transactions in, or in connection with, a contract for the purchase or sale of a commodity for future delivery in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a);

- B. cheating or defrauding or attempting to cheat or defraud other persons or willfully deceiving or attempting to deceive such other person by any means whatsoever in regard to any such order or contract in or in connection with any sale of any futures contract of any commodity that is or may be used for hedging or determining the price basis of any transaction or for delivering any commodity in interstate commerce for or on behalf of any other person in violation of Section 4(b)(a)(2)(C)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(C)(i) and (iii);

- C. cheating or defrauding or attempting to cheat or defraud any person or willfully deceiving or attempting to deceive any person by any means whatsoever for any foreign currency transaction within the Commission's jurisdiction in violation of Section 1.1(b)(1) and (3) of the Regulations , 17 C.F.R. § 1.1(b)(1) and (3);

- D. trading on or subject to the rules of any entity registered with the U.S. Commodity Futures Trading Commission;

10

E.  Soliciting funds for, engaging in, controlling, or directing the trading of any commodity futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

**IT IS FURTHER ORDERED** that FLG and DaSilva are permanently restrained, enjoined and prohibited from directly or indirectly:

A.  destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of FLG and DaSilva, wherever located, including all such records concerning FLG's business operations;

B.  refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

C.  withdrawing, transferring, removing, dissipating, concealing, or disposing of, in any manner, any funds, assets, or other property, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account held by, under the control, or in the name of any of the Defendants for the amounts indicated in this complaint.

**IT IS FURTHER ORDERED** that FLG and DaSilva shall:

A.  provide the Commission with continuing access to any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of FLG and DaSilva, wherever located, including all such records concerning FLG's business operations;

B.  provide an accounting to the court of all of FLG's assets and liabilities, together with all funds it received from and paid to clients and other persons in connection with commodity futures transactions or purported commodity futures transactions, and all disbursements for any purpose whatsoever of funds received from commodity transactions, including salaries, commissions, interest, fees, loans and other disbursements of money and property of any kind, from, but not limited to, December 2000 through and including the date of such accounting.

The injunctive provisions of this Order shall be binding upon FLG and DaSilva, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of

FLG, and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with FLG and DaSilva.

### III.   ORDER FOR CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED** that:

FLG and DaSilva shall each pay a civil monetary penalty in the amount of $240,000, consisting of $120,000 for each of the two charges of violations of the Act set forth in the Complaint. Defendants shall each pay such civil monetary penalty by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check or bank money order, made payable to the U.S. Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, under cover of a letter that identifies Defendants and the name and docket number of the proceeding; Defendants shall simultaneously transmit a copy of the cover letter and the form of payment to the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, at the following address:  Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and to the Regional Counsel, U.S. Commodity Futures Trading Commission, Eastern Regional Office, at the following address:  140 Broadway, 19th floor, New York, NY 10005.

### IV.   ORDER FOR ANCILLARY EQUITABLE RELIEF

**IT IS FURTHER ORDERED** that:

A.   <u>Restitution</u>:  FLG and DaSilva shall pay and be jointly and severally liable for restitution to defrauded FLG customers in the amount of $2,704,597.40 (two million seven hundred four thousand five hundred ninety seven dollars and forty cents) plus pre-judgment interest and post-judgment interest.  Post-judgment interest after the date of this Order until the restitution is paid in full shall be paid at the post-judgment interest rate set forth in 28 U.S.C. § 1961.  Defendants are ordered to make such payments to the Registry of this Court by cashier's check, certified check or postal money order, under cover of a letter that identifies the

name and docket number of this action and the name of this Court, with a copy to Elizabeth C. Brennan, counsel of record for the plaintiff U.S. Commodity Futures Trading Commission. All payments made pursuant to this Order by Defendants shall first be made to the defrauded customers for restitution, pursuant to a payment plan that will be determined by the Court, until those amounts (including interest) are fully satisfied. All payments after satisfaction of the restitution shall be applied to the civil monetary penalty described herein;

B. <u>FLG Disgorgement</u>: FLG shall disgorge all benefits received, directly or indirectly, from acts or practices which constitute violations of the Act as described herein and deposit into the Registry of this Court $2,692,097.40, plus pre-judgment interest and provide the Commission and the Court with a written description of the funds and assets so disgorged. FLG is ordered to make such payments to the Registry of this Court by cashier's check, certified check or postal money order, under cover of a letter that identifies the name and docket number of this action and the name of this Court, with a copy to Elizabeth C. Brennan, counsel of record for the plaintiff U.S. Commodity Futures Trading Commission. All disgorgement payments made pursuant to this Order by FLG shall be used to pay restitution to the defrauded customers, pursuant to a payment plan that will be determined by the Court, until those amounts (including interest) are fully satisfied. FLG's disgorgement obligations under this Paragraph are co-terminus with FLG's restitution obligations, such that partial or full satisfaction or discharge of FLG's disgorgement obligations shall simultaneously result in identical partial or full satisfaction or discharge of FLG's restitution obligations;

C. <u>DaSilva Disgorgement</u>: DaSilva shall disgorge all benefits received, directly or indirectly, from acts or practices which constitute violations of the Act as described herein and deposit into the Registry of this Court $12,500 plus pre-judgment interest thereon and provide the Commission and the Court with a written description of the funds and assets so disgorged. DaSilva is ordered to make such payments to the Registry of this Court by cashier's check, certified check or postal money order, under cover of a letter that identifies the name and docket number of this action and the name of this Court, with a copy to Elizabeth C. Brennan, counsel of record for the plaintiff U.S. Commodity Futures Trading Commission. All disgorgement payments made pursuant to this Order by DaSilva shall be used to pay restitution to the defrauded customers, pursuant to a payment plan that will be determined by the Court, until those amounts (including interest) are fully satisfied. DaSilva's disgorgement obligations under this Paragraph are co-terminus with DaSilva's restitution obligations, such that partial or full satisfaction or discharge of DaSilva's disgorgement obligations shall simultaneously result in identical partial or full satisfaction or discharge of DaSilva's restitution obligations;

D. <u>Prohibition on Transfer of Funds</u>: FLG and DaSilva shall not transfer or cause others to transfer funds or other property to the custody, possession or control of

any other person for the purpose of concealing such funds or property from the Court, the Plaintiff, or any officer that may be appointed by the Court;

E. **Third-Party Beneficiaries**: Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of the defrauded customers of FLG is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution amount which has not been paid by Defendants;

F. **Notices**: All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

    Notice to Commission:    Stephen J. Obie, Regional Counsel
                                          U.S. Commodity Futures Trading Commission
                                          Division of Enforcement - Eastern Regional Office
                                          140 Broadway, 19th floor
                                          New York, New York 10005; and

F. This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

**SO ORDERED**, at 5 pm, New York on this 21 day of Oct, 2005, at ~~a.m./p.m.~~

                                                      Honorable Robert W. Sweet
                                                      UNITED STATES DISTRICT JUDGE

        Respectfully submitted,

        U.S. COMMODITY FUTURES TRADING
        COMMISSION
        Stephen J. Obie
        Regional Counsel

By:____s/_____
        Elizabeth C. Brennan [EB-2612]
        Senior Trial Attorney
        Steven Ringer [SR- 9491]
        Chief Trial Attorney
        U.S. COMMODITY FUTURES TRADING
        COMMISSION
        140 Broadway, 19th Floor
        New York, New York 10005
        (646) 746-9747
        (646) 746-9939 (facsimile)
        ebrennan@cftc.gov